# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMMY ARMSTEAD, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 10 C 3478 ) |
| UNITED STATES OF AMERICA, | ) Judge Rebecca R. Pallmeyer ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Sammy Armstead was convicted of multiple drug offenses and sentenced to life in prison. After an unsuccessful appeal, and an unsuccessful petition for a writ of certiorari from the United States Supreme Court, Armstead filed a petition attacking his sentence pursuant to 28 U.S.C. § 2255. (Pet'r's Mot. [1], hereinafter "Pet.") The government responded to that petition, and Armstead filed an amended petition in reply. The government moves to strike [15] Armstead's amended petition as untimely because, Respondent argues, it contains claims that were not part of the original petition and do not relate back to that petition. For the reasons explained here, the court denies Respondent's motion to strike. Nevertheless, the court also denies Armstead's request in his amended petition for an evidentiary hearing and dismisses all but one of the claims in the amended petition as facially without merit. The remaining claim—that Armstead received ineffective assistance about proceeding to trial in light of an alleged government plea deal—will be the subject of further briefing.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Armstead was charged in a multi-defendant indictment with participating in a drug conspiracy at a public housing complex in Chicago. The dozens of Defendants, all members of the Gangster Disciples street gang, controlled and carried out drug sales at a residential building at 340 South Western Avenue ("the 340 building"). Each of the Defendants was indicted for, among

other things, conspiracy to possess with intent to deliver crack cocaine within 1,000 feet of a public housing complex. Many Defendants pleaded guilty. Armstead and two other Defendants went to trial and were found guilty; Armstead was convicted after a jury trial of multiple drug offenses on November 12, 2003. *See United States v. Wilson*, 481 F.3d 475, 477 (7th Cir. 2007); *United States v. Armstead*, No. 02 CR 895-2 (N.D. Ill. Nov. 12, 2003) (hereinafter "No. 02 CR 895-2"). The court sentenced him to life imprisonment.

Armstead's petition for a writ of certiorari was denied by the United States Supreme Court on June 1, 2009. *Armstead v. United States*, No. 08-10128, 129 S. Ct. 2754 (2009). Armstead filed his Section 2255 petition within a year of that date, as required by 18 U.S.C. § 2255(f), by placing it in the Bureau of Prisons mailing system on May 28, 2010. (Gov't's Mot. to Strike [15], hereinafter "Gov't's Mot.", at ¶ 2.) In that petition, Armstead claimed that he received ineffective assistance of counsel at trial and on appeal for a variety of reasons. (Pet. at 4-9.)

The government responded to Armstead's Section 2255 petition on September 1, 2010. (Gov't's Resp. [8].) In reply to the government's response, Armstead filed an amended petition on November 12, 2010. (Am. Pet. & Mem. of Law in Support of Pet'r's Mot. [14], hereinafter "Am. Pet.") The government now moves to strike that amended petition as untimely because it was filed more than five months after the one-year limitations period for a Section 2255 petition ended and, Respondent contends, it contains new claims that must be dismissed as untimely. (Gov't's Mot. ¶¶ 5-7.)

Armstead's amended petition asserts that he received ineffective assistance of counsel because counsel allegedly: (1) did not challenge the government's delay in obtaining an indictment (Armstead was indicted more than 90 days after the initial complaint); (2) did not raise a Speedy Trial Act objection when his trial began 301 days after his indictment; (3) before trial, during trial, and on appeal did not properly challenge the authenticity of recordings used as evidence against him and examine them for signs of tampering; (4) before trial, during trial, and on appeal did not adequately seek to sever his case from that of his co-Defendants, one of whom pleaded guilty to

2

possession and distribution of drugs; (5) improperly counseled him before trial about his decision to proceed to trial; (6) failed to properly argue for acquittal based on insufficient evidence in a Federal Rules of Criminal Procedure Rule 29 motion, at closing, and on appeal; (6) at trial and on appeal, did not challenge the government's "vouching" for witnesses who testified pursuant to plea deals; (7) did not challenge his life sentence as excessive under 28 U.S.C. § 841 during sentencing and on appeal; and (8) did not argue on direct appeal that new *Brady* evidence supported an insufficiency of the evidence claim. (Am. Pet. at 7-32, 34-36.) The amended petition also alleges that Armstead suffered a complete denial of counsel because, Petitioner asserts, he was questioned following his arrest without counsel during a "crucial interview." (Am. Pet. at 32-33.)

## DISCUSSION

**I.     Motion to Strike the Amended Petition**

The government objects to the amended petition as a whole, arguing that it contains "a host of new arguments, allegations, and issues" that were not part of the original petition and therefore are untimely. Armstead responds generally that (1) his amended petition did not raise new claims; or (2) any new claims in the amended petition relate back to claims in his original petition; and (3) he received leave from the court to file an amended petition. (Pet'r's Resp. to Gov't's Mot. to Strike [18], hereinafter "Pet'r's Resp.", at 2.) As evidence that none of the claims in his amended complaint are in fact new, Armstead notes the government's statement that he "actually raised twenty separate claims within [the] four [ineffective assistance of counsel] allegations" in his original petition. (*Id.*, citing Gov't's Mot. ¶ 2.)

Apart from both parties' generalized assertions, the government identifies only two claims in the amended complaint as not raised in the original timely petition.[1] (Gov't's Mot. ¶¶ 5, 10.) The

---

[1]     The government also notes Armstead's submission of a new affidavit and his request for an evidentiary hearing in his amended petition (Gov't's Mot. ¶ 5), but Armstead's desire
(continued...)

3

court therefore considers only those two issues. First, Armstead claims that his counsel provided ineffective assistance by failing to use *Brady* evidence to support an insufficiency of the evidence claim. Second, Armstead claims his counsel was ineffective for not challenging his life sentence under 28 U.S.C. § 841. The court examines these ineffective assistance of counsel claims briefly.

The court notes at the outset that if Armstead did not specifically list the two disputed claims in his original petition, they are timely only if they relate back to his original claims. *See Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002) (citing FED. R. CIV. P. 15(c)). To relate back, any new claims must have arisen out of the same conduct, transaction, or occurrence set out in the original petition and must not "assert[] a new ground for relief supported by facts that differ in both time and type" from those "set forth or attempted to be set forth in the original pleading." *Mayle v. Felix*, 545 U.S. 644, 656, 125 S. Ct. 2562, 2570 (2005). Under this test, the fact that Armstead's new claims arose out of the same "trial, conviction, or sentence" would not, by itself, be enough to make them timely. *Id.* (relation back should be construed strictly in habeas cases).

### A. *Brady* Evidence Claim

Before filing his Section 2255 petition, Armstead appealed his conviction and sentence to the Seventh Circuit. *United States v. Wilson*, 481 F.3d 475 (7th Cir. 2007); *United States v. Armstead*, 309 F. App'x 11, No. 04-1999 (7th Cir. Jan. 30, 2009). On appeal, Armstead submitted a *Brady* claim based on the post-trial discovery of two letters from a cooperating co-Defendant, Richard Epps, that the government inadvertently failed to produce among hundreds of pages of notes. Armstead asserts that Epps's testimony at trial was critical to the government's case against him, so his counsel was ineffective for not using Epps's letters to vigorously argue an insufficiency of the evidence claim on appeal. (Am. Pet. at 35-36.)

---

[1](...continued)
to present evidence in support of his existing claims does not by itself constitute the assertion of a new claim.

Respondent argues that an ineffective assistance claim based on Epps's letters was not part of Armstead's original petition and does not arise out of the same core facts as the original petition. (Gov't's Mot. ¶ 10(a).) The government contends that "merely . . . raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance" is insufficient for relation back. (Gov't's Mot. ¶ 10(a), quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005).) As support, Respondent cites *United States v. Griffin*, where Judge Coar of this court struck a supplement to a Section 2255 petition because it presented new grounds for relief unrelated to the original petition. No. 08 C 6934, 2010 WL 1780337, *4 (N.D. Ill. May 4, 2010). In *Griffin*, the petitioner's original motion alleged only that counsel failed to file a direct appeal, so the court held that claims that counsel was ineffective for failing to challenge a lineup identification did not relate back to the original petition. Respondent argues that Armstead's claim based on his counsel's treatment of the Epps letters is similarly factually distinct from the claims in his original petition and therefore does not relate back.

Armstead responds generally that all of the claims in his amended petition were presented in some form in his original petition. (Pet'r's Resp. at 4.) Thus, in his original petition, Armstead alleged that "counsel failed [on direct appeal] to argue insufficiency of the evidence, i.e., that every element of the charged conspiracy was not proven beyond a reasonable doubt," and "failed to properly argue the admission of the hearsay statements by Epps" at trial. (Pet. at 9.) Armstead views his amended petition as an effort to add more specific details to his original petition, not to add new or different claims. (Pet'r's Resp. at 5.) The court is unconvinced. Though Armstead clearly made an ineffective assistance claim in his original petition based on his counsel's failure to challenge the sufficiency of the evidence on appeal, his naming Epps's supposed hearsay statements without mentioning counsel's treatment of Epps's letters suggests that his original petition did not include a claim related to Epps's letters.

5

Nevertheless, the court is willing to assume that, as Armstead argues, the new claim relates back to his initial petition because it "tracks exactly the claims previously raised." (Pet'r's Resp. at 3.) Though Armstead did not specify Epps's letters as a specific reason for his insufficiency of the evidence claim in his original petition, he did claim his counsel failed to make an insufficiency of the evidence claim and to challenge evidence from Epps. Unlike *Griffin*—where a district court held that an ineffective assistance claim for failing to challenge a lineup did not relate back because it did not share the same core facts as a claim for failing to file a direct appeal—the facts here are related in time and type. In his original petition, Armstead challenged his counsel's failure to challenge the sufficiency of the evidence on appeal, and specifically noted Epps's contribution to that evidence. Armstead's amended petition merely adds another element of Epps's role as support for his claim that his counsel did not effectively challenge it. For reasons explained below, Armstead's claim relating to the Epps letters lacks merit, but the claim is not untimely because it is factually related to Armstead's original petition. Respondent's motion to strike the amended petition is denied as to the *Brady* claim.

**B.     Challenge to Life Sentence**

In his original petition, Armstead also alleged that his counsel was ineffective at sentencing and on appeal because "Counsel failed to properly challenge the drug quantities attributed to Petitioner because Petitioner was incarcerated during the majority of th[e] alleged conspiracy;" and "Counsel failed to argue insufficiency of the evidence, i.e., that every element of the charged conspiracy was not proven beyond a reasonable doubt." (Pet. at 9.) Armstead argues in his amended petition that his appellate and sentencing counsel provided ineffective assistance by not challenging Armstead's life sentence–a sentence that was improper, he contends, because the government (1) did not charge any drug amounts nor (2) prove drug amounts beyond a reasonable doubt, and (3) the jury did not attribute a specific drug quantity to Armstead. Since Armstead could

6

not be sentenced to a violation of 21 U.S.C. § 841 other than § 841(b)(1)(c) without proof of drug quantities, he argues, the maximum sentence he faced under § 841 was twenty years. (Pet'r's Resp. at 6, citing 21 U.S.C. § 841(b)(1)(c).) Armstead argues that his ineffective assistance at sentencing claim is timely because it was part of the general claim in his original petition that his counsel was ineffective for not making a sufficiency of the evidence argument. (Pet'r's Resp. at 6, citing *Mayle*, 545 U.S. at 657.)

The government urges that Armstead did not raise this sentencing claim in his original petition and it is "distinctly separate" from the ineffective assistance conduct Armstead outlined in his original petition. (Gov't's Mot. ¶ 10(b), citing *United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (affirming dismissal of an untimely ineffective assistance of counsel claim that did not arise out of the same set of operative facts).) The court disagrees. Though Armstead did not raise the § 841 sentencing claim in his original petition, it is factually similar enough to his general claim that his counsel was ineffective for not adequately challenging the sufficiency of the evidence against him on appeal or at sentencing. *Cf. Vitrano v. United States*, No. 12-1282, ___ F.3d ___, 2013 WL 3326834, *3 (7th Cir. July 1, 2013) (affirming district court's denial of leave to amend petition when new claims bore no resemblance to original claims because "[t]he proposed claims are not amendments in any fair sense of the word; they are not intended to 'save' or supplement the original claims whatsoever."). Armstead's original petition was—as the government itself pointed out—inexpertly organized and filled with a mix of generalized and specific claims. The court will not treat Armstead's ineffective assistance claim based on the § 841 sentencing issue as untimely because it shares enough core facts to relate back to his original petition.[2] The court therefore denies Respondent's motion to strike the amended petition, and considers the merits of

---

[2] In light of this disposition, the court does not address the parties' arguments regarding whether Armstead's disputed claims are permissible because he received leave from the court to file an amended petition.

the claims in Petitioner's amended petition below.

## II. Merits of Armstead's Amended Petition

To establish a claim of ineffective assistance of counsel under the Sixth Amendment, Armstead must show both that his counsel's performance was deficient because it fell below an objective standard of reasonableness and that the deficiency prejudiced his defense. *United States v. Westmoreland*, 712 F.3d 1066, 1080 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064-66 (1984)). Counsel is "strongly presumed" to have provided adequate assistance. *Strickland*, 466 U.S. at 690. The court examines Armstead's plethora of Sixth Amendment claims in turn.

### A. Challenges to the Timeliness of the Indictment

Armstead first faults his counsel for not challenging a supposed violation of 18 U.S.C. § 3161's provision that an indictment must be returned within 30 days of an arrest. (Am. Pet. at 7, citing 18 U.S.C. § 3161(a)-(b).) Armstead was arrested on September 17, 2002 and a complaint was filed against him and his co-Defendants the next day, but the government did not obtain an indictment against him until more than 90 days later, on December 19, 2002. (Am. Pet. at 6-7; United States Probation Office Pre-Sentence Report, hereinafter "PSR", at 1.) Armstead argues that his counsel provided ineffective assistance by neglecting to challenge the indictment after the delay.

The government responds that it sought and received an order from Chief Judge Kocoras granting an extension. (Gov't's Resp. at 8.) Moreover, because the government charged Armstead with participating in a conspiracy, if its original indictment had been dismissed, the government could promptly have obtained another indictment extending the relevant time period for the conspiracy. In fact, the government did later seek and obtain several superseding indictments, which charged that the conspiracy continued until at least September 2002, rather than December 2001 as alleged in the original indictment. (No. 02 CR 895-2 [185, 500].) Armstead's

8

ineffective assistance argument on this point therefore fails because even if Armstead's counsel was ineffective for failing to seek dismissal of the indictment, Armstead cannot show prejudice that is "specific, concrete, and supported by the evidence" related to his indictment timing claim. *See United States v. Hagler*, 700 F.3d 1091, 1099 (7th Cir. 2012) (quoting *United States v. Henderson*, 337 F.3d 914, 920) (7th Cir. 2003) (discussing due process analysis of trial delays under the Fifth Amendment). Armstead himself admits that to prevail on this claim he needs to show that "there was a reasonable probability that the motion [to dismiss the indictment] would have been granted." (Am. Pet. at 10, citing *Zedner v. United States*, 547 U.S. 489, 501 (2006).) Yet Armstead provides no analysis of the probability that the reviewing court would have actually chosen to grant the desired motion, nor any argument about why it would have. Finally, Armstead offers nothing to suggest that the government could not promptly have obtained a new indictment, had the original one been dismissed on timeliness grounds, particularly where the government in fact did obtain superseding indictments. There is no basis for the conclusion that counsel's failure to challenge the timeliness of the indictment prejudiced Armstead, and his claim on this basis fails.

### B. Challenges to the Timeliness of the Trial

Armstead next alleges that since his trial did not begin until 301 days after his December 12, 2002 indictment, the trial was untimely under the Speedy Trial Act, and his counsel was therefore ineffective for not moving for dismissal. (Am. Pet. at 12, citing 18 U.S.C. § 3161.) Though Armstead acknowledges that Section 3161(h)(8) gives district courts discretion to accommodate limited delays, he argues that the district court did not make the findings it should have made to support a continuance. (Am. Pet. at 11-12.)

Like Armstead's indictment timing claim, this argument also plainly fails. The court, within its discretion under the law, excluded time from the Speedy Trial Clock on several occasions, making reference to these exclusions on the record. *See* No. 02 CR 895-2 [137, 168, 214, 260,

281, 355, 380, 423, 493, 549, 583] (allowing excludable time to continue pursuant to 18:3161(h)(1)(F)). The Speedy Trial Act also permits exclusion of time during the pendency of defense motions, including motions filed by Armstead's co-Defendants. 18 U.S.C. § 3161(h)(1)(B). Armstead himself scheduled and then filed motions which stopped the Speedy Trial clock until the court ruled on them (No. 02 CR 895-2 [137, 281, 318-19, 336, 337, 339, 402-404, 408]), and he sought to postpone the trial. (*Id.* [493, 588, 654].) Armstead's counsel therefore did not challenge the timeliness of his trial. A motion to dismiss on the basis of a Speedy Trial Act violation would have had no chance of success.

Even presuming that Armstead's counsel should have challenged the court's Speedy Trial Act exclusions, Armstead offers no evidence that he was prejudiced by his counsel's choices beyond a bald assertion that "it is a certainty" that a motion to dismiss would have been granted had it been made. (Am. Pet. at 16.) To the contrary, the record in the case suggests that it would have been a gross abuse of discretion for the court to grant such a motion. Petitioner's unsupported assertions of prescience about how the court would have received a motion to dismiss do not demonstrate prejudice under *Strickland*. Armstead's ineffective assistance claim based on the timeliness of his trial is dismissed.

### C. Challenges to the Recordings

Armstead also asserts that he received ineffective assistance because his counsel did not adequately challenge recordings of Armstead at Gangster Disciples meetings that were used as evidence against him. (Am. Pet. at 17.) Armstead alleges that his counsel "assured [him] that she would challenge the tapes during trial and demonstrate to the jury that [his] voice was not on the tapes." (*Id.*) Armstead now complains, however, that his counsel should have obtained a voice analysis to challenge the authenticity of the tapes once he told her the voice on them was not his. He argues that "there is a reasonable probability that the verdict . . . would have been different" if his

counsel had obtained a voice analysis. (*Id.*)

This claim fails on the facts. Armstead's attorney *did* challenge the recordings at every stage of the proceedings, arguing at trial that the recordings were difficult to hear and that Armstead's voice could not be identified on the tape. Counsel also did retain a voice identification expert to testify at trial, withdrawing her request to call that expert as a witness only after the expert testified during a *voir dire* hearing that the recordings were "fairly accurate" and "audible." (Gov't's Resp. at 14-15.) On appeal, Armstead's counsel also unsuccessfully challenged the court's decision to allow the jury to review a transcript of a recording of a meeting in October 2001 involving Armstead. *Wilson*, 481 F.3d at 482. As the government notes, attorneys are ethically bound to refrain from making baseless claims. (Gov't's Resp. at 11, citing *Fuller v. United States*, 398 F.3d 664, 652 (7th Cir. 2005).) There was no legal basis for the objection Armstead claims his attorney should have made, and therefore no basis to conclude that his counsel's actions fall below the standards of a reasonably prudent attorney. The court therefore dismisses Armstead's ineffective assistance claims based on the recordings.

### D. Arguments for Severance

Armstead's ineffective assistance claims continue with an assertion that his counsel failed to properly argue for severance from his co-Defendants. Armstead admits that his counsel filed a motion to sever his trial from the trials of his co-Defendants on April 17, 2003. (Am. Pet. at 18; No. 02 CR 895-2 [337].) After the court denied the motion without prejudice, counsel did not renew the motion but did seek a new trial based on the denial (Am. Pet. at 18; No. 02 CR 895-2 [749]), a motion that this court also denied because Armstead made no showing that any circumstances in this case warranted severance of his case from that of his two co-Defendants. (4/9/04 Order, No. 02 CR 895-2 [877], at 5-6.) On appeal, Armstead's counsel argued that the district court erred in denying the motion to sever, but the Seventh Circuit concluded that Armstead had shown non

11

prejudice from the denial. (Am. Pet. at 18.)

Armstead admits that "[t]he claim here is exactly" the same one raised before and dismissed by the Seventh Circuit. (*Id.*) Yet Armstead attempts to obtain a different result now by calling his counsel's arguments for severance "barebones[,] . . . rambling and incoherent." (*Id.* at 19.) He complains that failing to sever his trial from that of his co-Defendants prejudiced him and that his Sixth Amendment right to confront his accusers was violated because he could not confront and cross-examine his co-Defendants. (*Id.*) The record completely undermines these claims. As Armstead admits, his counsel made a motion to sever and argued on appeal that the district court erred by denying that motion. *See Wilson*, 481 F.3d at 482. Armstead does not develop any argument showing how, exactly, his counsel failed to meet minimum reasonable standards of conduct in pursuing severance beyond noting that the outcome of her arguments was not favorable to Armstead. Even if Armstead had shown his counsel bungled the opportunity to argue for severance, he cannot establish prejudice because, as the Seventh Circuit has already noted, he makes no important arguments about how examining the two co-Defendants (assuming, against logic, that those co-Defendants would have waived their Fifth Amendment rights) would have helped him. Moreover, there was overwhelming evidence of his guilt. *See Wilson*, 481 F.3d at 478, 481 (evidence admitted against at trial was "overwhelming" and included evidence that "Armstead was recorded discussing the drug business and his role in it in a half-dozen meetings and phone calls."). The court therefore denies Armstead's ineffective assistance claim based on the arguments counsel made for severance.

### E. Pre-Trial Counsel about Proceeding to Trial

Armstead next alleges that he received ineffective assistance because counsel did not adequately counsel him before he made his decision to proceed to trial. (Am. Pet. at 20.) According to Armstead, his counsel told him that (1) the government had offered a deal involving

12

a 15-year sentence; (2) this offer had little value because he would receive a 15-year sentence regardless of whether he accepted the government's offer and pleaded guilty or was found guilty by a jury; (3) "she was certain [he] would be acquitted;" and (4) she would withdraw if he did not agree to go to trial. (*Id.*) Armstead argues that his decision to proceed to trial was therefore not a knowing and voluntary one.

Defense counsel does have a duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). In its response to Armstead's original petition, the government noted that Armstead had not alleged that a plea offer was ever actually made by the government. (Gov't's Resp. at 15-16.) Since Armstead has now alleged in his amended petition that a plea offer was in fact made by the government, the court will not rule on this ineffective assistance claim until the government has had a chance to respond to the substance of Armstead's amended petition.

### F. Insufficiency of the Evidence Claims

#### 1. Arguments during Rule 29 Motion, Closings, and on Appeal

Count One of the indictment against Armstead, a charge for which he was convicted at trial, charged him with conspiracy to distribute controlled substances within one thousand feet of the Rockwell Gardens public housing development, including the 340 building, from at least in or around July 1999 until at least in or around September 2002. (PSR at 2.) Count One alleged that the conspiracy concerned mixtures containing in excess of five kilograms of cocaine and in excess of 50 grams of cocaine base, and mixtures containing heroin. (*Id.*) It described a conspiracy among members of the Gangster Disciples street gang and others to control narcotics trafficking at the 340 building, a conspiracy that featured violence, firearms possession, and requirements that members sell narcotics provided by and for the benefit of the Gangster Disciples gang. (*Id.* at 3.)

Though it did not specify an exact amount of drugs, the Pre-Sentence Report estimated the

13

distribution of at least 1.5 kilograms of cocaine base was reasonably foreseeable to Armstead in the furtherance of the jointly-undertaken criminal activity. (PSR at 14.) That figure is based on statements by co-Defendants Derquann Butts and Charles Butts that they alone sold more than 5.647 kilograms of crack cocaine during Armstead's "reign" as Governor in the Gangster Disciples over the 340 building during the period from October 2001 to September 2002. (At least one other co-Defendant, Brian Price, also acknowledged selling an undetermined amount of heroin during that time; but the heroin sold by Price was not taken into consideration when calculating Armstead's base offense level in the Pre-Sentence Report. (*Id.* at 11, 14.))

Armstead contends that his counsel was ineffective for failing to argue that the government had not proven every element of the conspiracy charge in Count One against him during a Federal Rules of Criminal Procedure Rule 29 motion for acquittal. He also argues his counsel was ineffective for "fail[ing] to properly make the argument" during closing arguments and on appeal. (Am. Pet. at 26.) Armstead asserts that "Epps' testimony that [Armstead] was not part of the 340 building; that [he] was in prison during most of the alleged conspiracy; and that the transcripts of the alleged recordings of [him] had been altered" all undermine his conviction. (Am. Pet. at 30.) According to Petitioner, if his counsel had "properly argued that the government had failed to prove each and every element of the conspiracy, there is a reasonable probability that the jury would have acquitted and/or the Seventh Circuit would have reversed this conviction." (*Id.* at 30-31.)

The court finds no support for these claims. The Seventh Circuit noted on direct appeal that because Armstead was recorded "discussing the drug business and his role in it in a half-dozen meetings and phone calls . . . [his] perfunctory challenge to the sufficiency of the evidence" failed. *Wilson*, 481 F.3d at 481 n. 2. Though Armstead makes much of the fact that he was imprisoned in the Illinois Department of Corrections from 1999 until September 2001 (PSR at 12), the drug amounts attributed to him all stem from his "reign" over the 340 building beginning in October 2001, after he was released. While the Pre-Sentence Report does not cite an exact amount of drugs

attributable to Armstead's criminal conspiracy, it makes a reasonable estimate based on evidence from Armstead's co-Defendants and the other evidence in the case. Armstead is therefore wrong that Count One fails to charge any drug amount, or that the government failed to provide sufficient evidence generally. Petitioner's references to *United States v. Colon*–a Seventh Circuit case holding that evidence of "regular" purchases of drugs on "standard" terms was insufficient to sustain a drug conspiracy conviction–are not enough to support his claim that there was no evidence of conspiracy here. (Am. Pet. at 29, citing 549 F.3d 565 (7th Cir. 2008).)

Even if the court were to accept Armstead's scattered assertions that his counsel's assistance in arguing insufficient evidence was objectively unreasonable, there is no basis for a showing of prejudice based on his counsel's performance. Armstead complains merely that his counsel should have acted differently, and that doing so would somehow–Armstead does not adequately specify through what means–have prevented him from being convicted and sentenced as he was. Armstead's bare assertions on this point are not enough to undermine the previous rulings of this court and the Seventh Circuit considering the evidence for his conviction and sentence. Armstead's ineffective assistance claim on this point is therefore denied.

2. **Based on *Brady* Evidence**

Armstead next argues that he received ineffective assistance of counsel on appeal because his counsel did not adequately argue that the post-trial discovery of additional exculpatory letters from co-Defendant Epps undermine the sufficiency of the evidence against Armstead. Trial counsel made this argument as well. (*See* No. 02 CR 895-2 [748, 877].) This argument also clearly fails. First, appellate counsel did raise that argument. *See Wilson*, 481 F.3d at 479 ("The three defendants who went to trial challenge the district court's denial of their motion for a new trial on the basis of suppressed evidence."). More importantly, even if appellate counsel somehow failed to make that argument to Armstead's satisfaction, the Seventh Circuit clearly did consider

the issue and held that "in light of the overwhelming evidence against the defendants . . . the suppressed evidence was not material." *Id.* at 478. The Seventh Circuit determined that there was no reasonable probability of a different verdict had the letters been disclosed because "Epps's testimony [at trial] was by no means the only–or even the best–evidence that Armstead . . . participated in the . . . drug conspiracy." *Id.* at 481. As the court noted in denying post-trial motions filed by Armstead's co-Defendants, "[t]he government's failure to produce these documents before the trial is regrettable, but . . . did not deprive Defendants of a fair trial . . . [because the newly-produced documents] merely provide additional examples of conduct to which Epps freely admitted in his testimony, and on which he was exhaustively cross-examined." (4/9/04 Minute Order, No. 02 CR 895-2 [877], at 8.) Armstead cannot establish any prejudice from the arguments his counsel made or did not make vis-a-vis *Brady*, and his insufficiency of the evidence argument fails.

### G. Challenges to the Government's "Vouching" for Witnesses

Armstead next claims that his counsel was ineffective for not challenging what he asserts was improper "vouching" by the government for its witnesses during opening and closing arguments. Specifically, Armstead complains that the prosecutors told the jury that the witnesses were required to tell the truth as part of their plea agreements and that the evidence sustained the credibility of the witnesses. (Am. Pet. at 31.)

Armstead contends that his counsel should have challenged those remarks as improper at trial and raised them on appeal. Though Petitioner admits that such comments are technically permissible, he argues that because the Seventh Circuit has discouraged "unnecessarily repetitive references to truthfulness," any reasonably competent attorney would have objected to the government's statements, moved for a mistrial, and raised the claim on appeal. (Am. Pet. at 30-31, citing *United States v. Thornton*, 197 F.3d 241, 251-53 (7th Cir. 1999).) The government replies that

16

this claim should be dismissed as undeveloped and unsupported because Armstead does not identify the particular witnesses for which the government allegedly vouched or describe how he was prejudiced by the alleged vouching.[3] (Gov't's Resp. at 19, citing *United States v. Collins*, 604 F.3d 481, 488 n.2 (7th Cir. 2010) (noting that undeveloped arguments are waived on appeal).) If Armstead had sufficiently specified the details of his claim, it would still fail on the merits. As Petitioner himself admits (Am. Pet. at 30), the government is permitted to note that a witness's plea agreement compels that witness to testify truthfully. Even if the government's comments during opening and closing arguments had been improper, Armstead cannot establish prejudice, where so much of the evidence emphasized at closing consisted of his own recorded statements. The court therefore dismisses Armstead's ineffective assistance claim based on his counsel's unwillingness to challenge the government's supposed "vouching."

### H. Challenges to Petitioner's Life Sentence under 28 U.S.C. § 841

Armstead next asserts that since the indictment against him did not charge or allege any drug quantities, his statutory maximum sentence for Count One should have been no more than

---

[3] Though Armstead has offered no specifics, the court has reviewed a transcript of the closing arguments in this case. In her closing argument, AUSA Carrie Hamilton referred to the tapes, the testimony of federal agents, and the testimony of certain co-Defendants. She made no reference to their credibility. After defense counsel had challenged the credibility of the testimony of co-Defendants, AUSA Eric Sussman responded in a rebuttal. He noted, as prosecutors often do, that the government has little choice about the character of the cooperating individuals and co-Defendants called as witnesses; instead, it is Defendants themselves who "chose" the witnesses against them by going into business with them. (Tr. 2140-41.) Sussman acknowledged, however, that witnesses for the government got "deals", that is, a recommended sentence reduction in return for their testimony. (Tr. 2141.) He did encourage the jurors to read the witnesses' plea agreements, and suggested that the agreements create an incentive to tell the truth. (Tr. 2141-42.) At one point, when Sussman suggested the government had looked for other witnesses but had not found them, the court sustained Armstead's attorney's objection and reminded the jury to consider only those of Sussman's statements that were grounded in the evidence. (Tr. 2143.) Finally, Sussman commented that the fact that the various cooperating witnesses gave accounts that differed in certain details "tells you that they are telling you the truth, because if they all came in here with their dates and everything down and memorized, you would know that something is fishy that these guys can remember all these specifics with incredible coordination." (Tr. 2144-45.)

17

20 years pursuant to 21 U.S.C. § 841(b)(1)(c). (Am. Pet. at 34.) Because his counsel did not raise that argument, Armstead contends, his counsel's performance was "grossly deficient" and prejudiced him by causing him to receive a life sentence. (*Id.*) Armstead also argues that his counsel failed to "properly challenge the amount of drugs" attributed to him at sentencing and on appeal by "fail[ing] to argue the controlling precedent." (*Id.*) According to Armstead, he was "not even in [the] alleged conspiracy" for two thirds of its life because he was in jail, so he could not reasonably foresee the amount of drugs distributed during that time and was not responsible for them. (Am. Pet. at 35.)

As the government notes, the transcript of the sentencing proceedings clearly shows that Petitioner's counsel did challenge the drug quantity attributed to him at sentencing. (Gov't's Resp. at 22.) The court considered that argument and decided that Petitioner was responsible for the estimated 1.5 kilograms of crack cocaine sold during Armstead's "reign" over the building and that the evidence supported the conclusion that the amount of drugs trafficked was reasonably foreseeable to Armstead. (*Id.*) Armstead's counsel also appealed that ruling to the Seventh Circuit, which upheld this court's conclusion. *See Wilson*, 481 F.3d at 483. Counsel therefore fully litigated the drug quantity attributed to Armstead, and he has no basis for an ineffective claim based on that issue. The court therefore denies his ineffective assistance claim based on his life sentence under § 841.

### III.     Complete Denial of Counsel During Pre-Trial Interview

Finally, Armstead asserts that he suffered a complete denial of counsel during an unspecified post-arrest interview with government agents, and that information provided during the interview was later used against him at trial and during sentencing. (Am. Pet. at 32.) Armstead provides no other details concerning the date, time, subject matter, or participants in this meeting. Nor has he identified what information, if any, the government obtained as a result of the purported

interview. Though he raises the claim as a denial of counsel claim, Armstead also complains that at some point he informed his counsel that he had been left without representation during the interview, but his counsel never raised a denial of counsel claim at trial or on appeal. (*Id.* at 33.)

In response, the government observes that the basis for this claim is unclear because Armstead has offered no details about the alleged questioning. The government notes that Armstead did participate in a proffer session with two Assistant United States Attorneys and four law enforcement agents on December 6, 2002, but according to the government, Armstead's attorney also participated in that session. (Gov't's Resp. at 19-20.) Assuming that proffer session is the interview to which Armstead is referring, the government argues, the claim is factually baseless because counsel was present. (*Id.* at 20.) For obvious reasons, any claim of ineffective assistance in failing to argue the point would also fail. (*Id.* at 21.)

To make an ineffective assistance claim, a petitioner generally must prove both that his attorney's performance fell below an objective standard of reasonableness and that it prejudiced him. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 690, 694, 104 S. Ct. 2052, 2066, 2068). Prejudice is presumed, however, when there is a complete denial of counsel or denial at a critical stage of the litigation. *Id.* at 761-62 (citing *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 2047 (1984)). To qualify as a denial of counsel, counsel must be physically absent. *Id.* at 762.

Without addressing the circumstances of the December 6, 2002 meeting, the court agrees with the government that Petitioner's denial of counsel claim must be denied. Petitioner provides insufficient detail for the court to consider his claim, and nothing in the extensive record suggests that Petitioner was questioned without counsel present at any critical stage or that counsel later chose not to challenge any improper questioning. Armstead also does not explain the significance of the alleged meeting beyond stating that "information provided by [him] during that interview subsequently was used against him [(he does not say how)] during trial and in the determination

19

of his sentence." (Am. Pet. at 32.) Armstead has not identified any statements he made during the alleged uncounseled interview; he does not say what that he would not have made such statements had counsel been present; and he does not explain how any such statements were used. (*Id.*) Petitioner's claim is denied.

## **CONCLUSION**

Respondent's motion to strike [15] is denied. Petitioner's amended petition [14] is denied as to all claims except for his claim that he received ineffective assistance about proceeding to trial in light of an alleged government plea offer. The government is directed to respond, within 21 days, to that claim before the court rules on its merits.

Dated: July 18, 2013

ENTER

_____
REBECCA R. PALLMEYER
United States District Judge